IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LORI MATHISON, | ) | CASE NO. 3:13 CV 511 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.     Nature of the case and proceedings**

Before me[1] is an action by Lori Mathison under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 14. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Mathison, who was 43 years old at the time of the hearing, is a high school graduate who previously worked as a fast food worker, a cashier, a housekeeper, and a cut-off saw tender.[11] She lives with her boyfriend, his daughter, and the ten-month-old child of that daughter, with the boyfriend's daughter taking care of the housework and Mathison tending to the child.[12]

The ALJ, whose decision became the final decision of the Commissioner, found that Mathison had the following severe impairments: major depressive disorder, borderline intellectual functioning, heart disease, and degenerative disc disease.[13]

---

[6] ECF # 12.

[7] ECF # 16 (Commissioner's brief); ECF # 15 (Mathison's brief).

[8] ECF # 16-1 (Commissioner's charts); ECF # 15-2 (Mathison's charts).

[9] ECF # 15-1 (Mathison's fact sheet).

[10] ECF # 18.

[11] Transcript ("Tr.") at 60.

[12] *Id.* at 54.

[13] *Id.* at 50.

After concluding that the relevant impairments did not meet or equal a listing, particularly those of Listings 12.04 and 12.05, which concern mental impairments,[14] the ALJ made the following finding regarding Mathison's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) because the claimant requires a sit/stand option, allowing her to alternate between a sitting and standing position at least every thirty minutes, can never climb ladders, ropes or scaffolds and is to avoid hazards, including moving machinery and unprotected heights, as well as concentrated exposure to extreme noise, cold, heat, fumes, odors, dusts, gases and poor ventilation. The claimant is limited to simple routine repetitive tasks and requires a low stress job, defined as having only occasional decision-making duties, with only occasional changes in the work setting. She is also limited to occasional direct interaction with the public.[15]

The ALJ decided that this RFC precluded Mathison from performing her past relevant work, which was all unskilled.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of sedentary unskilled jobs existed locally and nationally that Mathison could perform.[17] The ALJ, therefore, found Mathison not under a disability.[18]

---

[14] *Id.* at 51-53.

[15] *Id.* at 53.

[16] *Id.* at 60.

[17] *Id.* at 60-61.

[18] *Id.* at 61.

**C.     Issues on judicial review**

Mathison asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Mathison presents the following issues for judicial review:

- The Commissioner failed to accord appropriate weight to the report of the treating physician Dr. Sprout.[19]

- The ALJ's finding that Mathison's reports of disability are not credible is not supported by the record.[20]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed and the matter remanded for further administrative proceedings.

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled

---

[19] ECF # 15 at 10.

[20] *Id.* at 14.

within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[21]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[22] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[23]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

---

[21] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[22] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[24]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[25]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[26] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[27]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[28] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[29] nevertheless, it must be "well-supported by medically acceptable

---

[24] 20 C.F.R. § 404.1527(d)(2).

[25] *Id.*

[26] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[27] *Id.*

[28] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[29] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

clinical and laboratory diagnostic techniques" to receive such weight.[30] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[31]

In *Wilson v. Commissioner of Social Security*,[32] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[33] The court noted that the regulation expressly contains a "good reasons" requirement.[34] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[35]

---

[30] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[31] *Id.* at 535.

[32] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[33] *Id.* at 544.

[34] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[35] *Id.* at 546.

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[36] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[37] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[38] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[39]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[40] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[41] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that

---

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (2013).

[41] *Id.* at 375-76.

court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[42] *Blakley v. Commissioner of Social Security*,[43] and *Hensley v. Astrue*.[44]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[45] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[46] These factors are expressly set out in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (3)-(6) and §§ 416.927(c)(2)(i)-(ii), (3)-(6).[47] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[48]

---

[42] *Rogers*, 486 F.3d at 242.

[43] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[44] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[45] *Gayheart*, 710 F.3d at 376.

[46] *Id.*

[47] *Id.*

[48] *Rogers*, 486 F.3d at 242.

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[49] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[50] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(c)(i)-(ii), (3)-(6) of the regulations,[51] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[52] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[53]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[54]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should

---

[49] *Gayheart*, 710 F.3d at 376.

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.*

receive controlling weight.[55] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[56] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[57] or that objective medical evidence does not support that opinion.[58]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[59] The Commissioner's *post hoc* arguments on judicial review are immaterial.[60]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment.

---

[55] *Rogers*, 486 F.3d 234 at 242.

[56] *Blakley*, 581 F.3d at 406-07.

[57] *Hensley*, 573 F.3d at 266-67.

[58] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[59] *Blakley*, 581 F.3d at 407.

[60] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[61]

- the rejection or discounting of the weight of a treating source without assigning weight,[62]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[63]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[64]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[65] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[66]

---

[61] *Blakley*, 581 F.3d at 407-08.

[62] *Id.* at 408.

[63] *Id.*

[64] *Id.* at 409.

[65] *Hensley*, 573 F.3d at 266-67.

[66] *Friend*, 375 F. App'x at 551-52.

The Sixth Circuit in *Blakley*[67] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[68] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[69]

In *Cole v. Astrue*,[70] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[71]

### *3. Credibility*

In articulating reasons for discounting a claimant's credibility, the ALJ must provide enough of an assessment to assure the reviewing court that he or she has considered the relevant evidence and be specific enough to permit the court to trace the path of the ALJ's

---

[67] *Blakley*, 581 F.3d 399.

[68] *Id.* at 409-10.

[69] *Id.* at 410.

[70] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[71] *Id.* at 940.

reasoning.[72] The ALJ's credibility finding is entitled to deference and should not be disturbed absent compelling reasons.[73]

**B.     Application of standards**

This matter presents the not-uncommon situation of the ALJ ascribing greater weight to the opinions of state examining and reviewing medical sources than that given to the opinion of Mathison's treating medical source. In addition, the opinion of the treating source that was given minimal weight was given in 2011, while the other opinions are from 2009.

As was noted during the oral argument, there is substantial evidence in the record to support the opinions rendered in 2009, as they concern Mathison's condition from the onset date of July, 2008 through October, 2009. But, for the period between October, 2009 and the date of the ALJ's decision in October, 2011, Mathison's RFC must rest on whether the ALJ properly discounted the September, 2011 mental RFC assessment submitted by Kelly Sprout, M.D., a treating source. As acknowledged during the oral argument by counsel for the Commissioner, the ALJ cannot simply carry forward the RFC from earlier opinions without analyzing the more recent RFC produced by a treating source.

The Commissioner's counsel conceded at oral argument that the ALJ here did not conduct an analysis of Dr. Sprout's opinion as required by *Gayheart*. Specifically, there is no distinct, two-step process by which the ALJ first determines, under the appropriate

---

[72] *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

[73] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

-14-

criteria, if the treating source opinion is entitled to its presumption of controlling weight, with any decision against the presumption supported by a statement of good reasons, and then a separate finding, under separate criteria, as to the appropriate weight to assign to the opinion, with that finding also supported by another statement of reasons.

Notwithstanding that rubric, the ALJ here collapsed these two steps into one, concluding that Dr. Sprout's opinion was entitled to only some, minimal, or no weight and giving some reasons for that finding.[74] The ALJ found that Dr. Sprout's statements on Mathison's "moderate restrictions" in understanding, remembering and carrying out "short/simple decisions," and "marked" restrictions as to "detailed instructions," were supported "to some extent" by the record evidence.[75] But the ALJ also found that opinions as to interacting with others, social interaction, and activities of daily life were entitled to no weight or only minimal weight, largely because they are not congruent with Mathison's own statements recorded in the reports of the earlier examining sources.[76] The ALJ finally observed that "with respect to all of Dr. Sprout's findings, credibility issues are suggested, ... based on the apparently misleading information the claimant was providing to Dr. Sprout regarding her compliance with the medication management portion of treatment."[77]

---

[74] Tr. at 54-55.

[75] *Id.* at 55.

[76] *Id.*

[77] *Id.* at 55-56.

-15-

While this analysis is not, as noted above, entirely consistent with the standard set forth in *Gayheart*, it is at least sufficiently clear to provide for meaningful judicial review. There are specific weights given to specifically identified portions of Dr. Sprout's opinion, with clear reasons, based on citations to the record, as to why those weights were given. As such, the analysis here could be harmless error, since the ALJ's decision seems to meet the objective of the good reasons requirement of the treating physician rule despite failing to adhere to all its elements. Further, favoring the opinions of examining or reviewing sources over that of a treating one is not *per se* impermissible, provided that the ALJ first properly justifies the decision to downgrade the opinion of the treating source.

But the analysis here falls short of that harmless error standard because – although clearly stated and so capable of meaningful judicial review – the reasons given for discounting Dr. Sprout's opinions are not good ones. The fundamental difficulty, simply stated, is in using observations from the 2009 opinions to contradict findings in the 2011 opinion without a discussion of changed circumstances.

In that regard, Thomas Evans, Ph.D., is the consultive psychological examiner whose 2009 opinion was given moderate to substantial weight by the ALJ[78] and cited as providing contradictory evidence to that noted by Dr. Sprout.[79] The record shows that Dr. Evans saw and evaluated Mathison before she even began treatment for the major depressive disorder

---

[78] *Id.* at 56.

[79] *Id.* at 55.

that is now one of her recognized severe impairments.[80] Thus, although he tested Mathison as having borderline intellectual functioning,[81] his comments on her relatively benign mental limitations take no account of things like Mathison's marked difficulties in dealing with others or with stress. Yet, all of these factors were known to Dr. Sprout over the course of the two-year treating relationship that began after Dr. Evans rendered his opinion,[82] and all were explicitly cited by Dr. Sprout as being due to that depression.[83]

Similar difficulties exist as to the opinions of Kevin Edwards, Ph.D., a reviewing source, and Steven Meyer, Ph.D., an consultative examiner.[84] The ALJ found that Dr. Edwards's opinion, which basically reviewed Dr. Evans's findings, "offer[s] great weight" to Dr. Evans's conclusions, but were only assigned minimal to moderate weight in fashioning the RFC.[85] Dr. Meyer's opinion, on the other hand, was afforded "significant weight" because, in part, the ALJ found that Dr. Meyer's October 13, 2009, report

---

[80] *See*, ECF # 15 at 12 (citing transcript).

[81] Tr. at 422.

[82] Dr. Evans's opinion is dated March 23, 2009 (*Id.* at 417), and Dr. Sprout treated Mathison from August 28, 2009 to September 9, 2011. *Id.* at 741. *See also*, ECF # 15 at 12 (citing transcript for evidence of Mathison's depression-related problems appearing on the record in the form of staff notes at Firelands Counseling and Recovery Services, where Dr. Sprout was on the medical staff).

[83] Tr. at 742.

[84] *See*, Tr. at 56.

[85] *Id.*

"account[s]" for Mathison's "complaints of depression that had occurred" by the time of Dr. Meyer's examination.[86]

In fact, Dr. Meyer's findings make only a single reference that "clmt began receiving tx at Firelands Counseling 8/28/09."[87] While perhaps this bare notation technically "accounts" for the multi-year treatment for depression than Mathison had just begun with Dr. Sprout, it in no way reflects that Dr. Meyer had anything other than the most minimal information on that treatment. And the fact is that Dr. Meyer issued his opinion years before the record was fully developed by Dr. Sprout, a treating source, as to the debilitating symptoms of that depression. Under those circumstances, the ALJ has not given a good reason to assign higher weight to the opinion of Dr. Meyer – an examining source – over that accorded to Dr. Sprout.

In sum, the ALJ's opinions as to the weight given to the opinions Drs. Evans, Edwards, and Meyer is very likely supportable for the time from the date of alleged onset in July of 2008 up to the date of Dr. Meyer's opinion in October, 2009. However, for the reasons stated above, the ALJ has not given good reasons for discounting the opinion of Dr. Sprout and so assigning higher weights to the non-treating source opinions for the period after October, 2009.

---

[86] *Id.*

[87] Tr. at 471.

## Conclusion

Substantial evidence does not supports the finding of the Commissioner that Mathison had no disability. Accordingly, the decision of the Commissioner denying Mathison disability insurance benefits and supplemental security income is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: March 21, 2014            s/ William H. Baughman, Jr.
                                                                    United States Magistrate Judge